UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CRISTOBAL CALDERON,<br><br>                  Plaintiff,<br><br>     v.<br><br>C. VUE, et al.,<br><br>                  Defendants. | No.  2:22-cv-0124 DAD CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se.  The claim which remains arises under the Eighth Amendment and concerns the alleged use of excessive force by C. Vue, a Correctional Officer at Mule Creek State Prison.  Defendant Vue's motion for summary judgment is before the court.

I. Plaintiff's Allegations

In his complaint, which is signed under the penalty of perjury, plaintiff alleges that on March 25, 2018, at about 2:20 a.m., defendant entered plaintiff's cell while plaintiff was sleeping. Defendant raped plaintiff, hit plaintiff's face and upper body with his fists, and stabbed plaintiff with a pen many times on his neck and body.

II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

1 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
2 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
3 amendments).

4 In resolving the summary judgment motion, the evidence of the opposing party is to be
5 believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the
6 facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475
7 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
8 obligation to produce a factual predicate from which the inference may be drawn. See Richards
9 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
10 (9th Cir. 1987). "[T]he mere existence of some alleged factual dispute between the parties will
11 not defeat an otherwise properly supported motion for summary judgment; the requirement is that
12 there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–
13 248 (1986). "When opposing parties tell two different stories, one of which is blatantly
14 contradicted by the record, so that no reasonable jury could believe it, a court should not adopt
15 that version of the facts for purposes of ruling on a motion for summary judgment. Scott v.
16 Harris, 550 U.S. 372, 380 (2007). Put another way, where the record taken as a whole could not
17 lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.
18 Matsushita, 475 U.S. at 587 (citation omitted).

19 The Eighth Amendment prohibits prison officials from inflicting cruel and unusual
20 punishment on inmates which has been defined as "the unnecessary and wanton infliction of
21 pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused
22 of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the
23 core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore
24 discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7
25 (1992).
26 /////
27 /////
28 /////

3

III. Defendant's Argument and Analysis

Defendant asserts that the allegations by plaintiff that defendant attacked him are complete fabrications.

    A. Evidence Presented by Defendant

Defendant points to the following evidence in support of his argument:

    1. In his declaration, defendant asserts that his only interaction ever with plaintiff was on March 25, 2024, between 2:30 and 4:30 a.m. At that time, plaintiff knocked on his cell door as defendant passed. Plaintiff asked defendant his name. Defendant responded by telling plaintiff his first initial, and last name while pointing to his badge. Defendant then recalls seeing plaintiff sitting at his desk with a light on writing the remainder of the night. Defendant indicates that plaintiff's cell door was never opened during the approximate time plaintiff was allegedly attacked. The court assumes this is based upon defendant's observations at that time as defendant does not point to any documentary evidence in support of this.

    2. Computer entries show that defendant was at a computer at Mule Creek at 2:33 a.m. and 2:35 a.m. on March 25, 2024, entering the results of an inmate count conducted by him just prior to entry. ECF No. 37-4 at 8-9. The counts are generally conducted at 2:30 a.m. ECF No. 37-3 at 2.

    3. On March 26, 2018, plaintiff submitted two requests for medical care. In the first, plaintiff indicates as follows:

> I request a medical examination of my physical body, because on 3-25-18 I was assaulted by c/o Vue in my cell at night while I was asleep and he was sticking me with a pen in the back and I feel pain all over my body.

ECF No. at 37-6 at 16.

In the other, plaintiff indicates:

> I have a medical emergency. I have a serious infection in my mouth with two blisters that are located under my tongue, and on one side of my left lip, because I was stabbed with an infected needle in my mouth during a fight. Please help!

Id. at 17.

4

The next day, plaintiff met with psychologist A. Gutierrez. Mr. Gutierrez indicates as follows with respect to the visit:

> 3/27/18 IP seen due to MH5 request that he be seen due to paranoid delusions of being attacked during the night, despite him being single celled. IP presented for session to ask if he can be enrolled in the DDP program so that he can be housed in building 7 because he does not feel safe in building 6. IP described being attacked during the night by an unseen assailant who punched him and poked him with needles. IP described several different episodes of the same type of incident happening to him on other yards and in other institutions. IP also believes that the nurses attempt to poison him at times by switching out his medication with poison. He also believes that the officers pump gas into his cell at night to try to kill him. IP has a long standing history of paranoid delusions that take the form of people attempting to kill him by either beating him up, stabbing needles into him, poisoning his food or medications, and poisoning the air that he breathes. Despite these delusions, IP participates in programming, attends to his ADLs, and attends ABE III where he is looking forward to earning his GED.

Id. at 48-49. Mr. Gutierrez provided that information to psychiatrist Dr. Flanigan attached to the following correspondence:

> Hi Dr. Flanigan,
>
> I just wanted to make sure you are aware of the situation with Calderon. I saw him earlier and I copied part of my note below so you could get an idea of the current delusions he is having. There is some question at this point if we should be considering a DSH referral due to the severity of his delusions. However, he does appear to be functioning in most domains at this time. He had been previously refusing to take his Risperidone but has been taking it now. He has recently been refusing to take his Effexor but I spoke to him today and he said he would start taking it. He believed that the nurses were switching it out with poison. I assured him he would be okay if he took it and he agreed to start. Following my meeting with him this morning, he went and spoke to the sergeant and told the sergeant that he had been attacked by an invisible officer (as he told me) but then added to the story that he had been raped. I believe he should be coming up to meet with you soon so I'll be interested on your opinion on whether you think we should be considering a DSH referral for him at this time. Thanks!

Id.

Also, it appears plaintiff was assessed on March 27, 2018, and it was determined that he did not need to see a nurse at that point. Id. at 101. The court cannot ascertain whether that was a determination made by staff or whether plaintiff indicated he did not need to see a nurse.

/////

5

Plaintiff was then assessed by a nurse on March 28, 2018. Id. at 137. It appears at that point plaintiff only complained about the pain in his mouth and no other physical injuries were observed by the nurse who conducted the assessment. Id. at 137-143.

4. Plaintiff's medical records indicate he suffers numerous mental health issues including schizophrenia, e.g. id. at 1-5.

5. Plaintiff's medical records include other instances of plaintiff accusing staff of causing him harm including:

    A. On September 20, 2017, Social Worker P. Barnes indicates that plaintiff reported he was being assaulted in his sleep daily by staff. Id. at 5.

    B. On January 4, 2018, Post-Doctoral Intern S. Rahmany indicates plaintiff "[c]urrently believes he is telepathic, officers trying to kill him, chemicals are coming into his cell through the vents . . . ." Id. at 230.

    C. On April 2, 2018, Nurse C. Bartel documented that plaintiff was experiencing "tactile" hallucinations and reported that "c/o coming in cell and attacking him on a regular basis; states 'I feel him stick me.'" Nurse Bartel noted there were no signs of injury in those places where plaintiff claimed he has sustained them. Id. at 343.

    D. On April 9, 2018, plaintiff submitted a "Health Care Services Request Form" claiming he was attacked by officers in his cell the night of April 3, 2018 and that these officers punched his face and nose, causing him to wake up with back pain. Id. at 14. Registered Nurse C. Austria assessed Calderon the following day and the record for that encounter does not note any visible injuries on Calderon's face or nose. Id. at 120-126.

    E. Finally, on April 16, 2018, plaintiff submitted another "Health Care Services Request Form" claiming a correctional officer stabbed him with a sharp pen, causing puncture wounds under his stomach and "bleeding from [his] private parts." Id. at 12. Two days later, Nurse Austria examined plaintiff again. The assessment notes from this encounter do not indicate the presence of genital bleeding or puncture wounds on plaintiff's body. Id. at 114-120.

/////

B. <u>Additional Evidence Presented by Plaintiff</u>

With his opposition, plaintiff provides the request for a meeting he submitted to psychologist A. Gutierrez. ECF No. 41 at 25. This was a separate request from the two March 26, 2024 requests for medical treatment identified above.

Plaintiff also provides a declaration. ECF No. 41 at 13. Plaintiff provides additional details about his version of the events of March 25, 2018, including whether the interaction occurring around 2:20 a.m. was his first interaction with defendant Vue and details of the alleged attack itself. The court does not recount most of these details as they do not tip the scale either way as to the question of whether, on the record before the court, a reasonable trier of fact could find that defendant attacked plaintiff. It is worth noting, for reasons explained below, that plaintiff indicates he knows he was attacked at 2:20 a.m. because he checked his watch. <u>Id</u>. at 18.

Plaintiff indicates that he left out of his March 26, 2018, requests for medical care that he had been raped out of shame and that was something, at that time, he did not want others to know. <u>Id</u>. at 19.

Plaintiff alleges on March 27, 2018, he went to the clinic and told nurse Bartel that he had been raped and attacked with a pen by officer Vue. According to plaintiff, nurse Bartel was indifferent toward him. She examined plaintiff very fast and probably failed to see the small puncture wounds on the back of plaintiff's neck and failed to make a medical report of plaintiff's injuries. <u>Id</u>. Plaintiff fails to point to anything in his medical records corroborating this visit, or Bartel's actions.

Plaintiff indicates that, also on March 27, 2018, he told psychologist Gutierrez that he had been raped and attacked with a pen by defendant. He did not say he had been attacked by an invisible officer. <u>Id</u>. at 20.

Plaintiff disagrees that he is schizophrenic and delusional because "he knows the difference between fact and opinion." <u>Id</u>. at 21.

C. <u>Analysis</u>

Considering the full record before the court, the court finds that no rational trier of fact could find that defendant violated plaintiff's Eighth Amendment rights. First and foremost, the

only aspect of plaintiff's claim that defendant violated plaintiff's Eighth Amendment rights which is corroborated at all is that defendant had an opportunity to commit the acts alleged as defendant admits he was in close proximity to plaintiff around the time plaintiff alleges he was attacked. However, the evidence presented by defendant as to when he was logged onto a computer entering count numbers and when the count was conducted, which plaintiff does not dispute, severely undermines the suggestion that defendant could have done the count, entered the numbers when he did, and still have had time to attack plaintiff at 2:20 a.m. With respect to whether the attack actually occurred and whether plaintiff suffered injury, there is no corroboration whatsoever. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (no genuine issue of material fact where only evidence presented is self-serving and uncorroborated). With respect to plaintiff's alleged injuries, and especially the puncture wounds, plaintiff's repeated interactions with medical staff shortly after the alleged attack provided ample opportunity for others to identify wounds from plaintiff's alleged attack, but none did.

Furthermore, plaintiff's numerous accusations of his being attacked by CDCR staff including unsubstantiated allegations that he was attacked at night and/or with a pen or needles, that CDCR staff were attempting to poison plaintiff with gas, and that nurses were poisoning plaintiff with the wrong medication, further undermine plaintiff's accusations against defendant.

The most important aspect of the record as to whether a rational trier of fact could find for plaintiff as to his remaining claim is that his allegations are self-serving and have almost no corroboration where there should be some. Consideration of this with the fact that plaintiff made numerous other unsubstantiated allegations of similar harm caused by officers other than defendant, allegations of harm that are either delusional or simply made up and plaintiff's record of mental difficulties leads to the conclusion that there is no basis upon which a reasonable and rational trier of fact could find for plaintiff. For these reasons, defendant's motion for summary judgment should be granted, and this case be closed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Vue's motion for summary judgment (ECF No. 37) be granted; and
2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 6, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
cald0124.msj